UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-cv-00059

DANNY REDDICK,                                                                    PLAINTIFF

v.

CHUBB NATIONAL INSURANCE CO.,                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon motion by Plaintiff Danny Reddick ("Plaintiff") for summary judgment against Defendant ACE American Insurance Company ("Defendant").[1] [DN 8.] Defendant has responded. [DN 12.] This matter is ripe for adjudication. For the following reasons, Plaintiff's Motion is **DENIED** and his Complaint is **DISMISSED.**

## I. Background

This case arises out of a boating accident that took place on Lake Barkley in Trigg County, Kentucky on July 26, 2016. [DN 8, at 2.] Plaintiff was participating in a local fishing competition and utilizing his personal boat. Plaintiff allowed Joe Noel, who was accompanying Plaintiff that day, to operate the boat. [*Id.*] Noel allegedly "operated the aforementioned boat [negligently, and] at a high right of speed which resulted in a collision with another vessel." [*Id.*] As a result of the crash, Plaintiff suffered numerous injuries, "including fractured vertebra." [*Id.*] Plaintiff has an ongoing lawsuit against Noel in state court, which is being held in abeyance. [*Id.*]

The subject of the dispute currently before the Court is the insurance policy which covered Plaintiff's boat. Specifically, Plaintiff's Boatsman Policy, purchased from Defendant, provides for "bodily injury liability coverage in the amount of $300,000.00." [*Id.*] However,

---

[1] Per DN 12-1, at 1, Defendant has noted that it was improperly identified as Chubb National Insurance Company in the case name. The actual company name is ACE American Insurance Company.

Plaintiff's policy also contains a liability exclusion for precisely the type of incident that occurred on Lake Barkley on July 26, 2016. [*Id.*] The exclusion at issue provides as follows:

> **PART B: LIABILITY COVERAGE…EXCLUSIONS: We** do not provide coverage under PART B: LIABILITY COVERAGE for:
>
> (a) Liability of other **Covered Persons** to **you** or any **Resident Relative**
> (b) **your** liability to any **Resident Relative**;
> (c) liability assumed by a **Covered Person** under any contract or agreement;

[DN 12-2, at 13.] In the above-quoted language, "you" is defined as the named insured, Plaintiff. [*Id.* at 16.] A "covered person" is the named insured, "or any person or legal entity operating the **Insured Vessel** as shown on the Declarations Page with **your** direct and prior permission." [*Id.*] As Defendant explains in its Factual Background section, "[b]ecause Mr. Noel was operating the boat with Mr. Reddick's permission, Mr. Noel is a Covered Person under the Policy, and, therefore, the Policy excludes coverage for damages arising from the liability of Mr. Noel to Mr. Reddick…. [DN 12-1, at 3.] Plaintiff does not dispute the exclusion's language, nor does he argue that it should not apply to his situation. Rather, Plaintiff argues that the "Boatsman Policy goes against public policy and is therefore non-enforceable." [DN 8, at 2.]

## II. Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When examining whether a motion for summary judgment should be granted, the court is required to resolve all ambiguities and draw all reasonable inferences against the movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "not every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Rather, the question is whether the party who bears the

burden of proof in the case has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). This means that the plaintiff must present to the court more than a mere scintilla of evidence supporting her position. *Id.* Indeed, the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *Id.* It is not enough for a plaintiff to present speculation as to elements of the case, because "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. Discussion

Under Kentucky law, "if a contract, howsoever innocently entered into, has a direct tendency to, and would if upheld and enforced, injuriously affect a material and substantial part of the public, it will be declared to be one against public policy and most generally nonenforceable." *Forbes v. Ashland*, 55 S.W.2d 917, 919 (Ky. 1932). Notably though, "contracts voluntarily made between competent persons are not to be set aside lightly." *Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954). Indeed, "a contract term is unenforceable on public policy grounds only if the policy asserted against it is *clearly manifested by legislation or judicial decisions* and is *sufficiently strong* to override the very substantial policies in favor of the freedom to contract and the enforcement of private agreements." *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 880 (Ky. 2013) (emphasis added). This stems from individuals' "basic and fundamental liberty to contract and create personal insurance policies." *Phila. Indem. Ins. Co. v. Tryon*, 502 S.W.3d 585, 591 (Ky. 2016). With this in mind, the Court will analyze Plaintiff's argument that he is entitled to relief.

In support of his argument that the insurance policy he has with Defendant is unenforceable on public policy grounds, Plaintiff cites principally to *Lewis v. West Am. Ins. Co.*, 927 S.W.2d 829 (Ky. 1996). In *Lewis*, the Kentucky Supreme Court held that the so-called "family" or "household" exclusion in an automobile insurance policy was unenforceable as contravening public policy. The family/household exclusion "limit[ed] the insurance coverage available for a person's injuries solely on the basis of the injured party's status as a member of the policyholder's family." *Id.* at 830. The defendant in *Lewis* tried to use this policy provision in order to minimize its payment to a nine-year old girl who was seriously injured in a car wreck. *Id.* Whereas the automobile insurance policy covering the car in which she was riding provided liability coverage in the amount of $100,000 per person and $300,000 per accident, the family/household exclusion provision limited the girl's recovery to $25,000, the "statutory minimum where the injured person is the named insured or a member of a named insured's family, regardless of who is driving the automobile." *Id.*

In finding the exclusion unenforceable as against public policy, the Kentucky Supreme Court stated that "[t]o uphold the family exclusion would result in perpetuating socially destructive inequities," and cited to three factual scenarios in support of this proposition: first, "every day in [Kentucky] parents participate in car pools and drive their children and their neighbor's children to school, social, and recreational events. However, if the parents' negligence results in an automobile collision…., only the neighbor's children can be fully compensated." *Id.* at 833. Second, "when two married couples drive to dinner in the driver's car and all are injured by the driver's negligence, the driver's friends are protected by the full amount of insurance coverage but not the driver's spouse." *Id.* Lastly, "it is commonplace for two neighborhood families to drive to a common destination with the children from both families

4

intermingled in both cars. Unfortunately, if the cars negligently collide, only those children who happen to be riding with their neighbor can be fully compensated." *Id.* Plaintiff points to these factual scenarios and attempts to relate them to analogous situations involving boats. [DN 8, at 6.] Specifically, Plaintiff argues that "[r]ecreational boats are socially used in the same manner as automobiles….It is commonplace for multiple families and friends to travel on one recreational boat and have multiple individuals operate said boat." [*Id.*] And it is the fact that Noel was operating the boat, with Plaintiff's permission, that has precluded any recovery by Plaintiff from Defendant. To permit Defendant to refrain from paying Plaintiff would, according to Plaintiff, "perpetuate the socially destructive inequities which the *Lewis* decision held must be avoided." [*Id.*]

The Court is sensitive to the fact that the arrangement on Plaintiff's boat wherein Noel and not Plaintiff was driving has resulted in unfortunate consequences for Plaintiff. However, Plaintiff's reliance on *Lewis* is misplaced. To be sure, *Lewis* stands for the proposition that a family exclusion "to insurance coverage is deleterious to our community interests and is repugnant to the public policy of our Commonwealth," but the decision was confined to automobiles. *See Lewis*, 927 S.W.2d at 830. Indeed, the Kentucky Supreme Court expressly noted three years later in *Kentucky Farm Bureau Mut. Ins. Co. v. Thompson*, 1 S.W.3d 475, 477 (Ky. 1999) that

> [a]lthough our language in *Lewis* was admittedly broad and seemingly applicable to all liability insurance contracts, our intent was only to hold unenforceable those family exclusion provisions found in *automobile* insurances policies such as the policy at issue in the controversy then before the Court [in *Lewis*]. To the extent that the language of our holding in *Lewis* was overly broad, we now limit the holding of that case to automobile insurance policies only.

Thus, this Court declines to extend the decision in *Lewis* to boatsman insurance policies, especially in the face of direct language from the Kentucky Supreme Court limiting its holding to automobile policies.

Plaintiff also utilizes *Lewis* for the proposition that "[p]ublic policy is not static and fixed. It is dynamic, flexible and fully capable of adapting to new situations and findings in order to permit our institutions to better serve the needs of our citizens." *Lewis*, 927 S.W.2d at 835. Additionally, "'[p]ublic policy is a variable quantity. It varies with the habits, capacities, and opportunities of the public. It often changes as the laws change, and therefore new applications of old principles are required.'" *Id.* (quoting *Chreste v. Louisville Ry. Co.*, 180 S.W. 49, 52 (1915)). This, Plaintiff argues, coupled with the "impact that recreational vessels have in the state of Kentucky," [DN 8, at 3], indicates that the policy at issue contravenes public policy and should be held unenforceable. It is true that the *Lewis* Court addressed public policy at length, as well as "[t]he need for adaptation in the law [which] was fully recognized by the founders of our Republic." *Lewis*, 927 S.W.2d at 835. However, the judicial system's ability and authority to make changes under the guise of public policy is not absolute. "[It] has long been the law in Kentucky" that "'[t]he establishment of public policy is not within the authority of the courts….It is the prerogative of the legislature to declare that acts constitute a violation of public policy.'" *Thompson*, 1 S.W.3d at 477 (quoting *Commonwealth v. Wilkinson*, 828 S.W.2d 610, 614 (Ky. 1992)). This is because "[c]ourts are interpreters and not makers of the law." *Gathright v. H.M. Byllesby & Co.*, 157 S.W. 45, 52 (Ky. 1913).

Indeed, "[o]nly after the enactment of the Kentucky Motor Vehicle Reparations Act (MVRA) did [the Kentucky Supreme Court] abrogate the family exclusion provision of a liability insurance contract." *Thompson*, 1 S.W.3d at 477. And the court only did this because it

"found such provisions to be contrary to the clearly stated purpose and policy of the MVRA – to assure that a driver be insured to a minimum level," and not because it "suddenly found the existence of such exclusionary provisions to be distasteful." *Id.* In the instant case, Plaintiff does not point to analogous constitutional provisions, statutes, or decisions of courts of last resort that pertain to boatsman insurance policies. The MVRA expressly stated "that the policy and one of the purposes of the [Act] is 'to require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles.'" *Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865, 866 (Ky. 1981) (quoting KRS 304.39-010(1)). It was from this statute that the Kentucky Supreme Court's decision in *Lewis* flowed. Because this Court finds no applicable boating laws or court decisions, it declines to entertain the notion of holding the types of policies at issue here unenforceable. In short, Plaintiff has presented no "clearly manifested...legislation or judicial decisions," nor is his argument "sufficiently strong to override the very substantial policies in favor of the freedom to contract and the enforcement of private agreements." *See Hodgkiss-Warrick*, 413 S.W.3d at 880.

### IV. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [DN 8] is **DENIED. IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED.**

All claims in the above-captioned action shall be **DISMISSED WITH PREJUDICE**, and the Clerk is directed to close the case.

There being no just cause for delay, this is a final and appealable order.

**IT IS SO ORDERED.**

cc: Counsel of Record